L. G. HAYDEN, Guardian, Appellee, v. GEORGE LATCH et al.,
Appellants.

**DEEDS:** Cancellation Because of Duress—Evidence. In an action by a
1  wife for the cancellation of her deed on the ground of coercion by
her husband, evidence of the husband's prior brutal treatment of
his wife may be material.

**DEEDS:** Cancellation—Mental Incompetency and Duress—Innocent
2  Grantee. When it is made to appear that a deed was executed be-
cause of the mental incompetency of the grantor, and of duress in-
flicted upon him, it is incumbent on the grantee, in order to avoid
a cancellation, to show that he had no knowledge of such incompe-
tency and duress.

*Appeal from Hardin District Court.*—R. M. WRIGHT, Judge.

MAY 6, 1921.

ACTION in equity to cancel contract by which George Latch
and his wife, Odessa, undertook to sell and convey land; also,
to set aside and cancel deed of conveyance by Latch and wife
to Last, and held in escrow by the defendant bank. Trial to the
court, and decree granting the relief prayed. Defendant Last
and wife appeal.—*Affirmed.*

*J. L. Cameron, H. A. Huff,* and *C. A. Bryson,* for appellants.

*Aymer D. Davis* and *Albert Steinberg,* for appellees.

WEAVER, J.—The plaintiff, as guardian of Odessa Latch,
alleges that his ward is of unsound mind and incapable of trans-

acting business; that her husband is a man of uncontrollable temper, who has subjected his wife to gross abuse, assaulting her with great violence and compelling her by cruel beating to submit to his will; that, in the year 1914, the wife was adjudged insane, and committed to the state hospital at Independence, from which she was discharged in 1916, but remained in a weakened and unsound condition of mind, and was still in such condition when the contract and deed now sought to be set aside were executed. Plaintiff further alleges that, in December, 1918, Latch desired to sell and dispose of the land—about 38 acres—on which the family lived, and thus deprive them of home and homestead; that the wife objected, and refused to join in such conveyance, whereupon Latch flew into a passion and threatened the life of his wife; and that, acting under duress and fear so exercised upon her, she signed the contract and deed to convey the property to the defendant Herman Last. Based upon these allegations, the plaintiff, as guardian of the said Odessa Latch, prays a decree declaring said instruments void, and restoring his said ward to all her rights in such property, the same as if such instruments never had been made.

1. DEEDS: cancellation because of duress: evidence.

Since this action was begun, the defendant George Latch has also been adjudicated insane, and answers by C. A. Bryson, guardian *ad litem*, who, after denying "all the allegations of the petition detrimental to the interests" of his ward, further alleges that such interests will be best promoted by sustaining the validity of the contract and deed.

Plaintiff's petition was filed January 30, 1919, and on February 12, 1919, the defendant Herman Last and wife appeared thereto and filed a pleading or answer, alleging that:

"They are willing to proceed with the contract or to abandon it, in accordance with the ruling of the court; however, they do not make any issue with respect to the competency of said Odessa Latch, or as to whether or not any duress was used upon her; that they respectfully disclaim interest in the main controversy in this case. Wherefore they ask to be relieved from any costs incurred in the action, and that any relief herein be made contingent upon the return to Herman Last and Mrs.

Last of the payment of $500 made by them, and restoring to them the sum of $10 paid for abstract of said premises.''

Thereafter, on September 3, 1919, the said defendants filed an amended and substituted answer, denying that Odessa Latch was of weak or unsound mind after her discharge from the state hospital, and alleging that the execution of the contract and deed was her own voluntary act.

On trial to the court, the testimony having been concluded, plaintiff filed an amendment to the petition, tendering to defendants a return, with interest, of the installment of $500 paid by defendants upon the contract of purchase, also tendering to defendants ''every and all things necessary, just, and equitable in the premises,'' and praying that, if the issues be found in his favor, the court may enter ''such decree as will be equitable and just in the protection of the rights of all parties.'' Trial was had to the court, which found the equities to be with the plaintiff, and entered a decree accordingly.

The evidence fully sustains the allegations of the petition as to the long-continued brutal and inhuman treatment of Mrs. Latch by her husband. For offenses of this character, he had repeatedly been arrested and prosecuted, and had served one term in the county jail and another in the state penitentiary. It also appears that Mrs. Latch had been adjudicated insane, and, after about two years' restraint in the state hospital, was discharged therefrom. Three practicing physicians were examined as witnesses. Two of them had made professional visits at the woman's home, and all had seen and examined her after alleged assaults and beatings inflicted upon her by the husband, and had seen the wounds and bruises upon her person, and all unite in expressing the opinion that she was of unsound mind. Upon cross-examination, the physicians, on the assumption of the truth of certain hypotheses stated by counsel, answered that they would say that the party was sane. She herself testifies, concerning the execution of the contract and deed in question, that her husband, desiring to sell the land, took her to an attorney's office in town, where she was shown a contract or contracts for such sale; but that she refused to affix her signature. On returning home, she says her husband beat her with his fists,

and demanded to know if she was going to sign the papers; and when she said she did not want to do it, he told her she "would get a killing;" and she finally told him she would do it; and on the next day, she went to the attorney's office with him and signed the instruments, which act she explains by saying, "I thought I might get another beating if I didn't." The young son of the parties, who was at the house on the night in question, corroborates the story of his mother as to the beating and the threats. The defendant George Latch did not testify as a witness on the trial, owing, we assume, to the fact that he himself had but recently been committed to the hospital for the insane.

On the part of defendants, several of Mrs. Latch's neighbors and acquaintances testified to their opinion that she was of sound mind at the time the papers were made. It was shown, also, that a mortgage had been foreclosed upon the premises, and the advertised sheriff's sale was close at hand; and there was competent evidence tending to show that the contract price of $175 per acre was the reasonable value of the property, though, according to other witnesses, it was worth more. There is still other evidence having a tendency to show that the woman discussed the terms of the proposed sale, and made objections to some of its provisions in a manner consistent with soundness of mind; but we are impressed with the belief that the record, as a whole, justifies the conclusion of the trial court, both as to her mental unsoundness and the alleged coercion and duress to which she was subjected. We cannot accede to the argument of appellant's counsel that the evidence as to the wife's treatment by her husband prior to this transaction is wholly immaterial. The practically undisputed proof that, for years, the woman had been the victim of cruel beatings and buffetings at the hands of her husband, had a direct tendency to show her subjection to his tyrannical domination, and lends probability to the truth of her story that this act on her part was the product of coercion and duress. It is also not without legitimate bearing upon the question of her mental soundness.

It is also urged that, even if the alleged mental unsound-
ness and coercion be proven or admitted, the contract and deed were, at most, voidable, and not void; and that, as Last was an innocent

2. DEEDS: cancellation: mental incompetency and duress: innocent grantee.

purchaser, without notice of the wrong, the contract and deed should be permitted to stand.

While it is true that title of a vendee or grantee without notice will not ordinarily be set aside on the mere ground that his grantor was not of sound mind, and it is also true that there is authority for the proposition that coercion or duress of a grantor will not necessarily avoid his deed to a grantee without notice, there is no such thing as an ''innocent holder'' of land, in the sense in which that term is used in the law of commercial paper; and, if it be clearly shown that the execution of a conveyance has been wrongfully obtained, the burden is upon him who claims title by or through such conveyance to show that he took it without notice of the defect. Now, notwithstanding the repeated statement in argument that Last had no notice or knowledge of either the plaintiff's mental unsoundness or of any duress exercised over her, the appellant, as a witness, does not so testify, nor does he seem to have been interrogated on that subject. Moreover, it is to be remembered that, in this case, the contract of sale was, and still is, executory. No title has yet vested in the purchaser, and the decree may readily be framed to restore the parties to their *status quo.* Though not, in form, an affirmative demand for specific performance, the defense put forth partakes of that nature, and its denial is within the court's discretion.

Considerable discussion has been directed by counsel to the matter of the ''answer'' filed by appellants on February 12, 1919. Appellee insists that it is to be treated as a disclaimer by the defendants, and a sufficient reason for denying them any relief; while appellants say it is an ''answer.'' To our mind, the label to be placed upon it is not very material. Whatever may be its true name, it is a declaration to the court of defendant's entire indifference whether the contract and deed shall be set aside or sustained, and they neither affirm nor deny the plaintiff's mental competency, nor affirm nor deny her allegation of duress. Then follows the declaration that they ''disclaim interest in the main controversy in this case.'' Whereupon, they ''ask to be relieved from any costs incurred in the action,'' and that any relief herein be made contingent upon the return to them of their advance payment of $500 and $10

paid for abstract. It very evidently means that they "don't want to fight," and wish to be excused therefrom, without liability for costs. What they mean by "main controversy" is hardly open to doubt. There is but one main controversy, and that is the validity or invalidity of the contract and deed, and in that they expressly "disclaim interest.". Taking the pleading as a whole, it seems quite clear that its purpose was simply to maintain a position which would enable defendants to insure a return of their advance payment upon the contract, without assuming the burden and cost of litigating the question of the alleged mental unsoundness and duress of the plaintiff. Even if called a waiver or disclaimer, we are not disposed to say that it was irrevocable. The substituted answer later filed appears to have been treated below as presenting the issues actually tried, and it will be so treated here.

We shall not further pursue the discussion of the testimony. There is much to which we have not specially referred, having more or less bearing in support of the claims advanced by the respective parties; but, upon the entire record, we think the preponderance is with the plaintiff. Such also appears to have been the judgment of the trial court, which had the advantage of the personal presence of the witnesses on the trial. We find no reason for disturbing the decree appealed from, and it is— *Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.